**Opinion issued May 23, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00511-CV

———————————

**JOHN KLUMB, VERONICA MCCLELLAND, VIVIAN MONTEJANO, JOHN GONZALEZ, ANITA ROBLES, CHARMAINE PILGRIM, AND THE CITY OF HOUSTON, Appellants**

**V.**

**HOUSTON MUNICIPAL EMPLOYEES PENSION SYSTEM, BARBARA CHELLETTE, DAVID L. LONG, LEONARD POLK, ROY SANCHEZ, AND LONNIE VARA, Appellees**

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2011-75492

**O P I N I O N**

This appeal concerns whether the trial court lacks subject-matter jurisdiction over a suit brought by John Klumb and five other plaintiffs against the Houston Municipal Employees Pension System ("HMEPS") and five members of its board of trustees. The trial court granted HMEPS's and the trustees' plea to the jurisdiction, dismissing the plaintiffs' claims and the claims of the City of Houston, which had intervened in the suit. On appeal, the plaintiffs and the City of Houston contend that the trial court erred by granting the plea. They assert that the suit is not barred because it arises from the trustees' ultra vires acts of violating Article 6243h of the Texas Revised Civil Statutes. Plaintiffs also argue that the trial court has jurisdiction over the constitutional claims they have raised.

Because we agree with HMEPS and the trustees that the trial court lacks subject-matter jurisdiction over the pleaded claims, we affirm the trial court's judgment.

**Background**

As a defined benefit pension plan, HMEPS provides retirement, disability, and survivor benefits for eligible City of Houston employees. Article 6243h of the Texas Revised Civil Statutes established HMEPS. *See* TEX. REV. CIV. STAT. ANN.

2

art. 6243h, §§ 1–28 (Vernon 2010).[1]  Pursuant to Article 6243h, an eleven member

Board of Trustees, or pension board, has broad authority to administer, manage,

and operate HMEPS.  *See id.* art. 6243h, § 2(a).

With respect to the pension board's authority, relevant text of Article 6243h,

section 2, provides as follows:

> (x) The pension board shall manage the pension fund under this Act and under the Internal Revenue Code of 1986, as amended, and may:
>
>> (1) adopt, for the administration of the pension fund, written rules and guidelines;
>>
>> (2) interpret and construe this Act and any summary plan, descriptions, or benefits procedures, except that each construction must meet any qualification requirements established under Section 401, Internal Revenue Code of 1986, as amended;
>>
>> (3) correct any defect, supply any omission, and reconcile any inconsistency that appears in this Act in a manner and to the extent that the pension board considers expedient to administer this Act for the greatest benefit of all members;
>>
>> (4) determine all questions, whether legal or factual, relating to eligibility for membership, service, or benefits or relating to the administration of the pension fund to promote the uniform administration of the pension fund for the benefit of all members and retirees; and

---

[1]  Article 6243h applies only to cities with a population of 1.5 million or more.  *See* TEX. REV. STAT. CIV. ANN. art. 6243h, § 1(4) (Vernon 2010).  Houston is currently the only city in Texas with a population of more than 1.5 million.

(5) establish and maintain records necessary or appropriate for the proper administration of the pension fund.

(y) The determination of any fact by the pension board and the pension board's interpretation of this Act are final and binding on any interested party, including members, deferred participants, retirees, eligible survivors, beneficiaries, and the city.

*Id.* art. 6243h, § 2(x)–(y).

Article 6243h also provides that the City of Houston ("the City") must make periodic payments to HMEPS based on a percentage of the combined salaries of the pension system members, who are active municipal employees. *See id.* art. 6243h § 8(d); *see also id*. art. 6243h, § 1(13).

In July 2011, the City and HMEPS entered into a contract called a "meet and confer agreement." The July 2001 meet and confer agreement (hereinafter, "the Meet and Confer Agreement") addressed, inter alia, the amount of contribution the City was required to pay HMEPS for the upcoming fiscal year. Over the years, the City and HMEPS have entered into a number of meet and confer agreements regarding various issues. Such agreements are authorized by Article 6243h, section 3(n). *Id.* art. 6243h, § 3(n).

The City's pension obligation relates generally to the amount of its employees' salaries. The City devised a plan to reduce such budgetary obligation by having non-City employees perform services previously performed by City employees. To this end, the City merged its Convention and Entertainment

4

Facilities Department with an existing local government corporation, the Houston Convention Center Hotel Corporation. Effective July 1, 2011, the City entered into an Interlocal Agreement and Lease Agreement with the Houston Convention Center Hotel Corporation to manage various City-owned facilities, such as theaters, convention centers, and parking lots.

Houston Convention Center Hotel Corporation then changed its name to Houston First Corporation, which assumed the obligations under the agreement with the City. The City planned to transition all but 39 of its employees from its Convention and Entertainment Facilities Department to Houston First Foundation, a newly created non-profit corporation. The City planned for the employee transfer to reduce its total amount of pension obligation based on its position that the transferred employees would no longer be HMEPS "members."

Article 6243h, section 1(13) defines "member" as follows: "each active employee included in the pension system, except for an employee who is ineligible under Section 4 of this Act." *Id.* art. 6243h, § 1(13). Article 6243h, section 1(11) provides:

"Employee" means any person, including an elected official during the official's service to the city, who is eligible under this Act and:

(A) who holds a municipal position or a position with the pension system;

5

(B) whose name appears on a regular full-time payroll of a city or of the pension fund; and

(C) who is paid a regular salary for services.

*Id.* art. 6243h, § 1(11).

On August 25, 2011, HMEPS's pension board had a meeting. The minutes from the meeting reflect that the board passed "a [m]otion to approve the amendments to the HMEPS Pension Plan Document." The minutes reflect that five trustees voted to approve the motion: (1) Barbara Chellette, (2) David L. Long, (3) Leonard Polk, (4) Roy Sanchez, and (5) Lonnie Vara. Trustee Craig Mason and another board member voted to deny the motion. Two other trustees were absent.

Also on August 25, 2011, the board chair signed the Pension Plan Document "As Amended and Restated Effective July 1, 2011." The Pension Plan Document contains a number of definitions, including the definition of "employee." That definition restates the definition of "employee" found in Article 6243h:

> A person who is eligible under the Act and (a) who holds a municipal position or a position with the Pension System; (b) whose name appears on a regular full-time payroll of the City or of the Pension System; and (c) who is paid a regular salary for services. "Employee" includes an elected official during the official's service to the City, if he is eligible to participate under the terms of the Pension System as it relates to elected officials.

*See id.*

6

The pension plan definition, as set out in the Pension Plan Document, further provides:

> "Employee" also includes a full-time employee of a Texas local government corporation ("LGC") controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such LGC's employees are Employees for purposes of the Plan.

Before the Convention and Entertainment Facilities Department transferred any employees to Houston First Foundation, the Board passed and adopted a resolution on October 6, 2011 ("the Resolution"). The Resolution provides, "[T]he requirements for membership in HMEPS are provided under the terms of Article 6243h . . . and the . . . Meet and Confer Agreement dated as of July 2011." The Resolution further provides, in part, as follows:

> ***Whereas***, the Board of Trustees has previously determined that an "Employee" for purposes of HMEPS includes a full-time employee of Texas local government corporation controlled by the City of Houston ("City"), upon determination by committee of the Board of Trustees consisting of the elected trustees and the trustee appointed by the elected trustees (the "External Affairs Committee") that such entity's employees are Employees for purposes of membership in HMEPS;
>
> ***Whereas***, under the interpretations previously adopted by the Board of Trustees, Houston First Corporation and its wholly owned and controlled subsidiary, Houston First Foundation, are controlled by the City, and thus the employees on the payroll of either the Houston First Corporation or the Houston First Foundation are considered Employees for purposes of membership in HMEPS;
>
> ***Now Therefore Be It Resolved***, employees of any entity controlled, directly or indirectly, by the City are considered Employees for purposes of membership in HMEPS, unless the External Affairs

7

Committee expressly determines otherwise; provided, however that nothing in this resolution would apply to an individual covered by the Houston Firefighters Relief Retirement Fund or the Houston Police Officers Pension System or any otherwise ineligible employee as determined by the External Affairs Committee . . . .

On October 24, 2011, Convention and Cultural Services, Inc. ("CCSI"), a Texas nonprofit corporation, was incorporated. Its articles of incorporation state that CCSI was organized for certain purposes, such as supporting "the operation and maintenance of public assembly facilities and theaters owned by the City of Houston."

An attorney for the City sent a letter to HMEPS, explaining that "[b]eginning on December 1, 2011, all eligible employees of the Convention and Entertainment Facilities Department, except for 39 employees who were within seven years of retirement with HMEPS, would "transition" to CCSI, "which will operate as an employee leasing company to furnish services to Houston First Corporation . . . ." The letter continued, "Neither Houston First Corporation nor Houston First Foundation will have any employees currently employed by [CCSI] . . . . Neither the City, the Mayor nor City Council will have any appointment authority or control over the corporation or its board of directors." The attorney further explained, "[CCSI] will be contracting for its own employee benefits, including a 401k plan, and will not participate in any City of Houston benefit programs."

In other words, the City took the position that, beginning December 1, 2011, all but 39 of the Convention and Entertainment Facilities Department's employees would no longer be City employees; they would be CCSI employees, whose services would be leased to Houston First, which would then utilize the CCSI employees to manage and operate City facilities. The employees would be doing the same job but, according to the City, they would have a different employer and would be members of a different pension plan. Thus, the City would no longer be obligated to make contributions to HMEPS based on those employees' salaries because they would no longer be City employees.

HMEPS's External Affairs Committee met on November 17, 2011. A notation in the meeting minutes indicates that the committee planned to "make determinations regarding Section 3(n) Meet and Confer issues." The minutes then indicate that the committee went into a closed session to consider "the documents regarding the Houston First Corporation and [CCSI]." The minutes show that, once back in open session, the External Affairs Committee discussed the documents and passed a motion that "the employees would be in a control group and that they remain as members of the plan." The following pension board members were members of the External Affairs Committee: Barbara Chellette, David L. Long, Leonard Polk, Roy Sanchez, and Lonnie Vara.

No one disputes that, before November 30, 2011, John Klumb, Veronica McClelland, Vivian Montejano, John Gonzalez, Anita Robles, and Charmaine Pilgrim were employees of the City. Before that date, each of these employees provided notice to the City that he or she was terminating his or her employment with the City at the end of business on November 30. These employees transitioned to CCSI, effective December 1, 2011. Klumb, McClelland, Montejano, Gonzalez, Robles, Pilgrim, and the City claimed that, beginning December 1, 2011, these individuals were no longer employees of the City but were employees of CCSI.

Klumb, McClelland, and Montejano each applied to begin receiving retirement benefits from HMEPS. Under Article 6243h, and as agreed in the Meet and Confer Agreement, a member of the pension system, who terminates employment with the City, is eligible for a normal retirement pension, beginning on the member's effective retirement date, if the member (1) completes at least five years of credit service and attains either 62 years of age or (2) the member is at least 50 years old and, when added together, the member's age and years of credited service equal the number 75. *See id.* art. 6243h, § 10(b). Klumb, McClelland, and Montejano each took the position that he or she was eligible to receive retirement benefits from HMEPS because he or she had terminated

10

employment with the City and met one of the retirement criteria of Article 6243h, section 10.

HMEPS disagreed, denying the applications of Klumb, McClelland, and Montejano for retirement benefits. HMEPS took the position that these individuals remained municipal employees, despite their transfer to CCSI. HMEPS based its decision on the definition of "employee" as found in the July 2011 Pension Plan Document.

Gonzalez, Robles, and Pilgrim did not contend that they were eligible to receive retirement benefits from HMEPS after being transferred to CCSI. Rather, they asserted that they were entitled to defer their retirement status because they were no longer employees of the City. The City also held this position. HMEPS disagreed, averring that Gonzalez, Robles, and Pilgrim also remained City employees. HMEPS asserted that these individuals must continue to make monthly contributions to HMEPS, and the City must continue to make contributions to HMEPS based on their salaries.

Klumb, McClelland, Montejano, Gonzalez, Robles, and Pilgrim (collectively, at times, "Plaintiffs") filed suit against HMEPS, asserting claims for constitutional violations and breach of contract. Plaintiffs also sought a declaratory judgment.[2] They asserted that, by continuing to define them as City

---

[2] The suit was filed as a class action but was never certified as such.

employees, HMEPS was violating Article 6243h. Plaintiffs also alleged that, by treating them as City employees, HMEPS was violating a section of the Internal Revenue Code. They requested the trial court to declare that they were no longer City employees. Plaintiffs also sought monetary damages from HMEPS.

HMEPS filed a plea to the jurisdiction, asserting that the trial court lacked subject-matter jurisdiction over the declaratory judgment action. HMEPS argued that Article 6243h does not provide for judicial review of its board's decisions, particularly those decisions based on an interpretation of Article 6243h. It asserted that the trial court lacked jurisdiction to review the board's decision that Plaintiffs remain city "employees" under Article 6243h. HMEPS also asserted immunity from suit with respect to Plaintiffs' breach of contract and constitutional claims.

Plaintiffs filed an amended petition. They sued not only HMEPS, but also five members of its board of trustees: (1) Barbara Chellette, (2) David L. Long, (3) Leonard Polk, (4) Roy Sanchez, and (5) Lonnie Vara (collectively, "the Trustees"). Seeking declaratory and injunctive relief, Plaintiffs alleged that the Trustees had, in their official capacities, committed the following ultra vires acts in violation of Article 6243h:

- "[V]oting to approve the motion of August 25, 2011, containing an unauthorized amendment of the statute and the Pension Plan; viz., a unilateral change to the definition of 'employee' that is totally inconsistent with the statutory definition contained in Section 1(11) of Article 6243h." The "change was made in violation of the statutorily-

12

prescribed procedure set forth in [s]ection 3(n) of Article 6243h for amending the statute and Pension Plan under such circumstances."

- "[V]oting to adopt the resolution of October 6, 2011 . . . implement[ing] the ultra vires amendment to the Pension Plan that unilaterally changed the statutory definition of 'employee' in [s]ection 1(11) of Article 6243h." Included in this ultra vires act was "an illegal determination that Plaintiffs were 'employees' under the Pension Plan, as that determination was based on an unauthorized amendment to the Pension Plan that was adopted in violation of [s]ection 3(n) of Article 6243h."

- "Adopting the October 6, 2011 resolution which purported to authorize an External Affairs Committee to determine who would qualify as an 'employee' under the illegal Pension Plan Amendment."

- "Adopting a construction of Article 6243h and the Pension Plan that fails to meet the qualification requirements of [s]ection 401, Internal Revenue Code of 1986, as amended, as required by [s]ection 2(x) of Article 6243h."

- Refusing to pay Klumb, McClelland, and Montejano their retirement benefits and denying Gonzalez, Robles, and Pilgrim their right to defer their retirement status.

Plaintiffs requested the trial court to declare that the Trustees (1) "acted without legal authority in approving the motion of August 25, 2011 . . . illegally chang[ing] the definition of 'employee' contained in ection 1(11) of Article 6243h without following the prescribed procedures in Section 3(n) of the statute"; (2) "acted without legal authority in adopting the resolution of October 6, 2011"; and (3) "acted without legal authority in determining that Plaintiffs and the members of the putative class are 'employees' of the City." Plaintiffs also sought to enjoin the Trustees from enforcing the alleged ultra vires acts, including a request that the

13

trial court enjoin "the ultra vires action of adopting an illegal amendment to the Pension Plan that disqualifies the Pension Plan under the Internal Revenue Code."

In addition, Plaintiffs asserted constitutional claims against HMEPS. Klumb, McClelland, and Montejano asserted that they have been denied equal protection under the Texas Constitution because HMEPS is treating them differently than it has treated past employees who have left employment with the City to work for other legal entities and who are now receiving retirement benefits. They also contended that their right to due course of law under the Texas Constitution has been abridged because they have a right to receive their vested retirement benefits. All Plaintiffs asserted a due course of law violation, alleging that HMEPS's attempt "to seize" contributions from their salaries is an unlawful taking in violation of their due course of law rights.

The City filed a petition in intervention. It generally echoed Plaintiffs' allegations that the Trustees had engaged in ultra vires acts in violation of Article 6243h. The City also sought injunctive and declaratory relief.

HMEPS filed an amended plea to the jurisdiction in which the Trustees joined. They asserted that the claims in the suit emanate from the pension board's interpretation of Article 6243h, specifically its construction of whether Plaintiffs fit within the statutory definition "employee." HMEPS and the Trustees argued that the trial court lacked subject-matter jurisdiction over the suit because the board's

14

interpretation of Article 6243h, per the statute, is final and binding with no right of judicial review. HMEPS and the Trustees asserted that the allegations of ultra vires acts are an attempt to recast claims of statutory misinterpretation solely for the purpose of creating jurisdiction. HMEPS also alleged that Plaintiffs' constitutional claims are barred by sovereign immunity.

Plaintiffs and the City responded to the plea. After a hearing, the trial court granted the plea to the jurisdiction. It rendered judgment dismissing the Plaintiffs' and the City's claims for lack of jurisdiction. This appeal followed.

On appeal, Plaintiffs list ten issues in their brief. Issues one through eight raise both general and specific challenges to the trial court's grant of the plea to the jurisdiction. Issue nine addresses the trial court's evidentiary ruling striking an affidavit offered by Plaintiffs in support of their response. Issue ten speaks to Plaintiffs' challenge to the trial court's denial of their motion for continuance. In its brief, the City raises one general issue challenging the trial court's decision to grant the plea to the jurisdiction.

## Plea to the Jurisdiction

### A. Standard and Scope of Review

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial

15

court has subject-matter jurisdiction. *Id.* at 446. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). When conducting a de novo review, the appellate court exercises its own judgment and re-determines each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

In deciding a plea to the jurisdiction, a court may not weigh the merits of the claims; it must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The court must take the allegations in the petition as true and construe them in favor of the pleader. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Bland*, 34 S.W.3d at 555. The court must review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 226. If the evidence creates a fact question regarding the jurisdictional issue,

then the court cannot grant the plea, and the issue must be resolved by the trier of fact. *Id.* at 227–28; *see Gonzalez*, 325 S.W.3d at 626. On the other hand, if the evidence is undisputed or fails to raise a fact question, the court must rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

## B. Ultra Vires Claims

In their second, third, and fourth issues, Plaintiffs assert that the trial court erred by granting the plea to the jurisdiction with respect to their ultra vires claims requesting declaratory and injunctive relief. Plaintiffs also contend in their ninth issue that the trial court abused its discretion by striking an affidavit they offered as jurisdictional evidence. The City, in its sole issue, offers arguments aligned with those of Plaintiffs with respect to the ultra vires claims. Thus, for ease of reference, we refer collectively to the City and Plaintiffs as "Appellants."

Appellants contend that the trial court has subject-matter jurisdiction over their ultra vires claims for declaratory and injunctive relief in which they seek to require the Trustees to comply with the provisions of Article 6243h. Appellants cite *City of El Paso v. Heinrich* for the proposition that ultra vires suits seeking "to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." 284 S.W.3d 366, 372 (Tex. 2009).

The Trustees are critical of Appellants' reliance on *Heinrich*. They point out that their plea to the jurisdiction did not seek to dismiss Appellants' claims for

17

declaratory and injunctive relief based on sovereign immunity. Rather, they asserted that the trial court lacks subject-matter jurisdiction because the board of trustees has exclusive authority to interpret Article 6243h and to make benefits decisions. The Trustees argue that there is no right of judicial review of such determinations.

In support of their position, the Trustees rely on *Houston Municipal Employees Pension System v. Ferrell*, 248 S.W.3d 151 (Tex. 2007). There, the Supreme Court of Texas dismissed a claim for declaratory and injunctive relief against HMEPS in which the plaintiffs were challenging a benefits decision by the board. *Id.* at 158–59. The plaintiffs asked "the trial court to hold that the statute requires the pension board to credit each plaintiff's retirement account with time served . . . and [to hold] that the pension board was violating the law by refusing to grant such credit." *Id.* at 158. The plaintiffs also "requested that the trial court issue an injunction directing the pension board to comply with the trial court's interpretation of Article 6243h." *Id.* at 158–59.

In determining whether the trial court had jurisdiction over the claims, the *Ferrell* court reiterated the well-established precept, "There is no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right." *Id.* at 158 (citing *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001); *Cont'l Cas. Ins. Co. v.*

*Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *Firemen's & Policemen's Civil Serv. Comm'n v. Kennedy*, 514 S.W.2d 237, 239–40 (Tex. 1974); *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790–92 (Tex. 1951)). The court further explained that "when an act is either silent on the question of appeal or expressly denies a right to appeal, a party may appeal only 'where the administrative action complained of violates a constitutional provision.'" *Id.* (citing *Hancock*, 239 S.W.2d at 790).

The *Ferrell* court underscored that Article 6243h provides, "The determination of any fact by the pension board and the pension board's interpretation of this Act are final and binding on any interested party." *Id.* (citing TEX. REV.CIV. STAT. art. 6243h, § 2(y)). The court concluded that the relief sought by the plaintiffs, "whether labeled a declaratory judgment or review of a pension board decision, exceeds the power of the trial court as limited by the 'final and binding' language of Article 6243h." *Id.* at 159. The court held, "Because the Legislature has not authorized the trial court to grant the relief sought, the trial court lacks jurisdiction over the case." *Id.*

The Trustees interpret the holding in *Ferrell* to mean that ultra vires suits cannot be maintained against members of the pension board. Appellants counter that *Ferrell* is inapposite to the instant suit because no ultra vires allegations were asserted in *Ferrell* beyond the allegation that the pension board violated the statute

19

by misinterpreting it. Appellants aver that they have not merely alleged that the Trustees misinterpreted the statute. Rather, they point out that they have alleged that the Trustees violated Article 6243h by "effectively amending the statute without following the proper statutory procedure."

Given the allegations in this case, *Heinrich* and *Ferrell* are both instructive. *Heinrich* serves to illustrate that a government official may be sued for ultra vires acts to require the official to comply with statutory or constitutional provisions. *See* 284 S.W.3d at 372. *Heinrich* also defines what constitutes an ultra vires act, instructing that an ultra vires suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* The suit "must not complain of a government officer's exercise of discretion." *Id.*

We agree with Appellants that an agency's exclusive authority to decide a matter, or to take an action authorized by a statute, does not insulate the agency's officials from ultra vires claims when they have acted outside of their authority.[3] As *Heinrich* makes clear, ultra vires claims are, by definition, not against the state agency involved, but are properly brought against the agency official, who is

---

[3] By analogy, courts have held that a party may seek judicial review of an agency action before administrative remedies are exhausted, at a time when the agency retains exclusive jurisdiction over the dispute, if the agency has exercised authority beyond its statutorily conferred powers; that is, when the actions are ultra vires. *See Appraisal Rev. Bd. of Harris Cnty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

acting without authority. *See id.* at 370–72. Ultra vires suits against government officials are permitted because they "do not attempt to exert control over the state—they attempt to reassert the control of the state." *See id.* at 372. Thus, if the pension board members have acted outside their statutory authority, or failed to perform a ministerial act, they can be sued for such action or inaction, as described in *Heinrich*. Such a conclusion is not inconsistent with *Ferrell*, which did not involve an express assertion of ultra vires claims against the pension board members. Thus, *Ferrell* does not prohibit a suit based on properly alleged ultra vires claims.

*Ferrell* is, however, instructive to our jurisdictional analysis. If Appellants are recasting a challenge to a statutorily authorized act by the pension board as an ultra vires claim, then *Ferrell* prohibits judicial review of that action. Appellants do not assert that the Texas Legislature has authorized judicial review of HMEPS's actions taken pursuant to Article 6243h. *Ferrell* makes clear that, save a constitutional violation, there is no right to judicial review of an agency action when the legislature has not expressly authorized such review. *See* 248 S.W.3d at 158–59.

With these principles in mind, we turn to the record to determine whether Appellants' factual allegations and the jurisdictional evidence establish as a matter of law that the Trustees "acted without legal authority or failed to perform a purely

ministerial act" or whether, at a minimum, an issue of material fact has been raised with respect to the jurisdictional issue. *See Heinrich*, 284 S.W.3d at 372. In other words, have Appellants sufficiently alleged facts to show that the Trustees acted in an ultra vires manner?

### 1.   *Amending the Statute*

Appellants allege that the Trustees acted without authority by unilaterally amending Article 6243h's definition of "employee" without entering into a meet and confer agreement pursuant to Section 3(n). Plaintiffs requested the trial court to declare that the Trustees "acted without legal authority in approving the motion of August 25, 2011 that illegally changed the definition of 'employee' contained in [s]ection 1(11) of Article 6243h without following the prescribed procedures in [s]ection 3(n) of the statute."

Article 6243h, section 1(11) defines "employee" as follows:

> [A]ny person, including an elected official during the official's service to the city, who is eligible under this Act and:
>
> (A) who holds a municipal position or a position with the pension system;
>
> (B) whose name appears on a regular full-time payroll of a city or of the pension fund; and
>
> (C) who is paid a regular salary for services.

22

TEX. REV. CIV. STAT. ANN. art. 6243h, § 1(11). A majority of the pension board voted to approve the addition of the following language to the foregoing definition of "employee":

> "Employee" also includes a full-time employee of a Texas local government corporation ("LGC") controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such LGC's employees are Employees for purposes of the Plan.

Appellants contend that the Trustees were without legal authority to add the foregoing language to the definition of employee without entering into a meet and confer agreement under section 3(n) of the act. We disagree.

Article 6243h, section 2(x) expressly provides that, not only may it "interpret and construe" the statute, the pension board may also "correct any defect, *supply any omission*, and reconcile any inconsistency that appears in this Act in a manner and to the extent that the pension board considers expedient to administer this Act for the greatest benefit of all members." TEX. REV. CIV. STAT. ANN. art. 6243h, § 2(x)(2)–(3) (emphasis added). This provision authorizes the pension board to augment Article 6243h with additional language as it deems necessary for the administration of the pension system. For this reason, the Trustees were not acting without legal authority when they voted to supplement the definition of "employee."

23

Appellants argue that the added language is an impermissible amendment, beyond the scope of a mere interpretation, because it conflicts with the established statutory definition of employee and effectively changes its meaning. However, determining the accuracy of Appellants' assertion would necessarily require interpreting the statutory definition of employee and reviewing the propriety of the board's decision to augment the definition, or "supply an omission," with additional language. As indicated in *Ferrell*, courts are without subject-matter jurisdiction to conduct such a review or to make such determinations. *See Ferrell*, 248 S.W.3d at 158.

In addition, Appellants assert that the Trustees were without authority to supplement the definition of employee without first entering into a meet and confer agreement with the City. Appellants contend that such an agreement was required by Article 6243h, section 3(n), which provides,

> Notwithstanding any other law, the pension board may enter into a written agreement with the city regarding pension issues and benefits. The agreement must be approved by the pension board and the governing body and signed by the mayor and by the pension board or the pension board's designee. The agreement is enforceable against and binding on the city and the pension system's members, retirees, deferred participants, beneficiaries, eligible survivors, and alternate payees.

TEX. REV. CIV. STAT. ANN. art. 6243h, § 3(n). Although it permits the pension board to enter into an agreement with the City regarding pension issues and benefits, section 3(n) does not *require* the pension board to enter such an

24

agreement when, as discussed above, the statute expressly authorizes the board to act on the issue. More precisely, the statute authorizes the board, in its discretion, to interpret and to supplement the statute, that is, "to supply any omission," for the expedient administration of the pension system. It does not require a meet and confer agreement for such action.

Appellants also point to past meet and confer agreements in which the parties had agreed to modify a statutory definition in some fashion. They assert that such agreements demonstrate that a meet and confer agreement was required before the pension board could add language to the definition of employee. Regardless of past practices, the statute does not require a meet and confer agreement for the pension board to supplement a definition as it deems necessary in its statutorily conferred discretion.

Appellants further assert that the pension board has admitted, in certain documents, that its supplementary language was an "amendment" of the statute. They cite meet and confer agreements in which the parties agreed to modify a statutory definition in some manner. They point to language in those documents stating that the agreements served to amend or to supersede the statute. Appellants assert that such language demonstrates that any language added to a statutory definition serves to amend the statute, an act beyond the pension board's authority and one reserved for the legislature.

Irrespective of the word choice in the meet and confer agreements relating to other statutory provisions, the Trustees were within their authority when they acted in this instance to supplement the definition of employee. Whether one labels the permitted agency action as a supplementation, an addition, an amendment or some synonym thereof, the agency action was permitted by Article 6243h.

Appellants also point to minutes from the August 25, 2011 board meeting. The minutes reflect that the board passed "a [m]otion to approve the amendments to the HMEPS Pension Plan Document." Appellants contend that amending the pension plan document is synonymous with amending the statutory definition of "employee."

Article 6243h contemplates the preparation of a pension plan document. The statute provides that the pension board may "adopt, for the administration of the pension fund, written rules and guidelines" and "may establish and maintain records necessary as appropriate for the proper administration of the pension fund." *Id.* art. 6243h, § 2(x)(1), (5). The statute further expresses that the pension board may interpret any "summary plan." *Id.* art. 6243h § 2(x)(2).

As the Trustees point out, the pension board has authority to "amend" or to make revisions to the pension plan document. Because Article 6243h provides the pension board with the authority to interpret and to supplement any omitted

26

language, it necessarily follows that the board also has authority to update or to amend the pension plan document to reflect those actions.

In addition, the Trustees offered evidence indicating that the plan document is a reference guide prepared by the pension system for the use of the Internal Revenue Service. In her affidavit, trustee Barbara Chellette testified that "The Plan Document reflects the Board of Trustees' interpretations of Article 6243h and the meet and confer agreements with the City as in effect . . . ." She also stated that "[i]t is routine practice for the full Board of Trustees to amend the Plan Document as new information becomes relevant for reference purposes such as to reflect changes in IRS administrative interpretations."

Appellants also contend that a fact issue has been raised by the affidavits offered as jurisdictional evidence. The Trustees each offered his or her own affidavit to support the plea. Each testified that, at the August 25, 2011 meeting, the board acted to "interpret" whether a City employee remains, for pension purposes, an employee under Article 6243h, section 1(11) when the employee is transferred to a local government corporation. Each stated they did not vote to "amend" the statute.

In response, Plaintiffs offered the affidavit of Craig Mason, who voted at the August 25, 2011 board meeting to deny the motion to amend the plan document.

Mason testified, in part, as follows:

27

At the August 25, 2011, Regular Meeting, several items were discussed. After these other items had been considered and voted on by the Board of Trustees, the Board was asked to consider proposed amendments to the Houston Municipal Employees' Pension System's Plan. One of those proposed amendments concerned a change to the definition of the word "employee" contained in [s]ection 1(11) of Article 6243h.

During the course of the discussion of the proposed amendment to the definition of "employee," concern was expressed that employees of a Local Government Corporation ("LGC") were not "employees" as defined in the statute. That is, some members of the Board were concerned that if employees of the City of Houston transitioned to an LGC, they would cease to be members of HMEPS. Some members of the Board believed that the loss of membership would have a detrimental effect on the funding of the Plan.

Additionally, there was discussion that in order to prevent former City employees who become employees of an LGC from ceasing to be members of HMEPS the statutory definition of "employee" needed to be amended.

There was no discussion about any need to clarify or interpret the term "employee." There was no discussion about any concern that the definition of "employee" was ambiguous, unclear, or incomplete. There was no discussion that the definition of "employee" already encompassed the employees of a local government corporation, or any LGC controlled by the City of Houston and simply needed to be clarified. There was no discussion about the Board of Trustees making an interpretation of "employee" as part of the Board of Trustees' exercise of discretion under Article 6243h to interpret the statute. Instead the discussion focused on the need [to] amend the definition of the term "employee" to include persons who were excluded under the statutory definition.

The Trustees objected to the admission of Mason's affidavit and moved to strike it. They asserted it was not relevant to the determination of the jurisdictional issues and that it contained inadmissible legal conclusions. The trial court

28

sustained the Trustees' objections and granted their motion to strike Mason's affidavit. The trial court's order indicates that it sustained the Trustees' objections that the affidavit contained impermissible legal conclusions and that Mason's testimony was not relevant. *See* TEX. R. EVID. 401 (defining "relevant evidence" as evidence having any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence); *id.* 701 (providing that lay witness's testimony is limited to opinions or inferences rationally based on perception of witness).

On appeal, Appellants assert, in their ninth issue, that the trial court abused its discretion in striking Mason's affidavit. They contend that the contrast between Mason's affidavit and those of the Trustees, regarding whether the pension board was "interpreting" or "amending" the definition of employee, serves to create a fact issue, precluding the grant of the Trustees' plea to the jurisdiction.

As discussed, to determine whether the Trustees engaged in ultra vires conduct, the inquiry is whether they acted without authority when they supplemented the statutory definition of employee under the Article 6243h to include employees of local government corporations. We have determined that they had such authority because Article 6243h expressly provides that the pension board may not only "interpret and construe" the statute, but may also "correct any defect, supply any omission, and reconcile any inconsistency that appears in this

29

Act in a manner and to the extent that the pension board considers expedient to administer this Act for the greatest benefit of all members." TEX. REV. CIV. STAT. ANN. art. 6243h, § 2(x)(2)–(3). We made such legal determination as a matter of statutory construction, which is a matter and question of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). The board members' divergent and subjective views of whether the Trustees acted to "amend" the statutory definition or to "interpret" it are not part of that analysis and do not serve to create a fact issue. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding that "matters of statutory construction are questions of law for the court to decide rather than issues of fact"). For this reason, Mason's affidavit is not material to the legal determination of whether the Trustees acted without authority, and it was not error for the trial court to exclude it. Moreover, the trial court's striking of the affidavit could not have caused the rendition of an improper judgment because Mason's testimony did not affect the answer to the legal determination to be made; thus, any error in the striking of the affidavit was harmless. *See* TEX. R. APP. P. 44.1(a)(1).

We conclude that, as a matter of law, the Trustees acted with statutory authority when they decided to supplement the definition of "employee" contained in section 1(11), without following the prescribed procedures in section 3(n). It was not an ultra vires act, as Appellants claim. *See Cf. Heinrich*, 284 S.W.3d at

30

372. Because the legislature has not authorized the trial court to review the board's decision to supplement the definition or to grant the declaratory and injunctive relief sought, the trial court does not have jurisdiction over the claim as alleged by Appellants.[4]  *See Ferrell*, 248 S.W.3d at 159 ("Because the Legislature has not authorized the trial court to grant the relief sought, the trial court lacks jurisdiction over the case.").

## 2.    *Improper Delegation of Authority*

Plaintiffs also contend that the Trustees acted without authority when they adopted the October 6, 2011 resolution, authorizing the External Affairs Committee to determine who would qualify as an "employee."[5]  Plaintiffs requested the trial court to declare that the Trustees "acted without legal authority

---

[4]    Appellants also contend that the Trustees engaged in ultra vires conduct because they have not performed purely ministerial acts (1) by failing to pay Klumb, McClelland, and Montejano their pension benefits and (2) by failing to acknowledge the deferred retiree status of Gonzalez, Robles and Pilgrim, instead requiring them to continue to pay into the pension system.  Relatedly, Appellants contend that the Trustees have exceeded their authority by determining that Plaintiffs remain employees for pension purposes.  The City asserts the Trustees exceeded their authority by requiring Plaintiffs and the City to continue making contributions to HMEPS based on the salaries that Plaintiffs receive from CSSI. However, because the pension board was authorized to supplement the statutory definition of employee to include persons employed by a local government corporation, the conduct complained of by Appellants were not ultra vires acts. Rather, they are authorized pension determinations based on the supplemental language.  Such decisions are not subject to judicial review.  *See Ferrell*, 248 S.W.3d at 158.

[5]    The City does not make this argument in its brief.

31

in adopting the resolution of October 6, 2011 . . . [and] in determining that Plaintiffs and the members of the putative class are 'employees' of the City."

Appellants acknowledge that Article 6243h, section 3(k) authorizes the pension board "[to] allocate among the trustees the responsibilities of the pension board under this Act." *See* TEX. REV. CIV. STAT. ANN. art. 6243h, § 3(n). Nonetheless, they assert that the Trustees had no authority to adopt the October 6, 2011 resolution, permitting the External Affairs Committee to determine whether "employees of any entity controlled, directly or indirectly, by the City are considered Employees for purposes of membership in HMEPS."

Plaintiffs contend that the July 2011 Meet and Confer Agreement amends Section 3(k), divesting the pension board of the authority to delegate decisions regarding plan membership. Plaintiffs point to the following provision in the meet and confer agreement: "Except for meet and confer decisions and personnel decisions, no committee shall have authority to make final approvals, but shall only make recommendations to the full Board."

Plaintiffs also reference text in the Meet and Confer Agreement, providing that the parties agree that "certain writings within the Agreement will have the effect of superseding provisions of the Statute." That agreement and previous meet and confer agreements contain statements indicating that certain specifically identified provisions of Article 6243h are "amended" by the agreement. Section

3(k) is not specifically identified in the Meet and Confer Agreement as being amended by any contractual provision.

The Trustees correctly point out that a meet and confer agreement is a contract. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (characterizing meet and confer agreement as a contract). They cite *Town of Flower Mound v. Rembert Enterprises, Inc.*, which held that a government official's failure to comply with a contractual provision cannot serve as the basis for an ultra vires claim. 369 S.W.3d 465, 476 (Tex. App.—Fort Worth 2012, pet. denied); *see Heinrich*, 284 S.W.3d at 371–72 ("[D]eclaratory-judgment suits against state officials 'allegedly act[ing] without legal or statutory authority'" are permissible, but "'declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State'" and are not permissible as ultra vires suits against individuals in their official capacity) (quoting *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855–56 (Tex. 2002)).

Plaintiffs respond that the cited case authority is not applicable "to a statute such as Article 6243h, which allows the parties governed by the statute to amend it by agreement." Specifically, Plaintiffs contend that section 3(n) permits the pension board and the City to amend Article 6243h. As described, section 3(n) provides, "Notwithstanding any other law, the pension board may enter into a

33

written agreement with the city regarding pension issues and benefits." TEX. REV. CIV. STAT. ANN. art. 6243h, § 3(n). That provision does not address whether the parties may agree to amend the statute; rather, it provides a means for the parties to resolve issues between them by contractual agreement. Whether the parties have characterized certain provisions in various meet and confer agreements as having the effect of amending certain provisions of Article 6243h may be material to the contractual duties each party owes to the other, but it does not serve to amend Article 6243h. Had it intended an agreement made under section 3(n) to supersede or to amend Article 6243h, the legislature could have said as much. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. § 143.307(a)–(b) (Vernon 2008) (providing that a collective bargaining agreement between police and firefighter associations and employers "supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, or other terms and conditions of employment to the extent of any conflict with the statute" and such agreement "preempts any contrary statute, executive order, local ordinance, or rule adopted by the state or a political subdivision or agent of the state").

We conclude that, as a matter of law, the Trustees' alleged violation of the Meet and Confer Agreement does not serve as a valid basis for an ultra vires claim. We hold that Appellants have not alleged claims conferring subject-matter

34

jurisdiction on the trial court enabling it to render the declaratory or injunctive relief sought. *See Ferrell*, 248 S.W.3d at 159.

### 3. *Non-Compliance with Tax Code*

In the trial court, Plaintiffs alleged that the Trustees committed an ultra vires act by "adopting a construction of Article 6243h and the Pension Plan that fails to meet the qualification requirements of [s]ection 401, Internal Revenue Code . . . as required by [s]ection 2(x) of Article 6243h." They requested the trial court to enjoin "the ultra vires action of adopting an illegal amendment to the Pension Plan that disqualifies the Pension Plan under the Internal Revenue Code."

Article 6243h, section 3(m) provides, "It is intended that this Act be construed and administered in a manner so that the pension system's benefit plan will be considered a qualified plan under Section 401(a), Internal Revenue Code of 1986, as amended." TEX. CIV. REV. STAT. ANN. art. 6243h, § 3(m). The statute also provides that any construction of the act by the pension board "must meet the qualification requirements established under [Internal Revenue Code Section 401(a)]." *See id.* § 2(x)(2).

To qualify as a "governmental plan" under 26 U.S.C. § 401(a), the plan must be established and maintained for the employees of a political subdivision of a state or its agencies or instrumentalities. *See* 26 U.S.C. § 414(d). Appellants acknowledge that the pension board has determined that Plaintiffs are government

35

employees for pension purposes, despite their transfer to CCSI. Appellants assert, however, that because such decision was incorrect, the Trustees have violated Article 6243h's provisions requiring compliance as an IRS qualified plan. It follows that a determination of whether the Trustees have violated the act's provisions, requiring compliance as an IRS qualified plan, would necessarily first require a court to conduct a substantive evaluation of the correctness of the pension board's discretionary and statutorily authorized decisions to supplement the definition of employee and to treat Plaintiffs as City employees for pension purposes.

As discussed *supra*, Article 6243h authorized the Trustees to make those determinations. Because they were authorized, these determinations were not ultra vires acts but were discretionary decisions made by the pension board. The substantive correctness of those discretionary determinations is not subject to judicial review. *See Ferrell*, 248 S.W.3d at 158 ("There is no right to judicial review of an administrative order unless a statute explicitly provides that right . . . ."). As a result, the trial court was without subject-matter jurisdiction to evaluate whether the Trustees committed an ultra vires act by "adopting a construction of Article 6243h and the Pension Plan that fails to meet the qualification requirements of Section 401, Internal Revenue Code."

36

We hold that the trial court is without jurisdiction to grant the declaratory and injunctive relief sought by Appellants based on the pleaded ultra vires claims. The trial court did not err when it granted the Trustees' plea to the jurisdiction on those claims.

We overrule the City's sole issue. We overrule Plaintiffs' second, third, fourth, and ninth issues.

## Constitutional Claims

In their fifth, sixth, seventh, and eighth issues, Plaintiffs assert that the trial court erred by granting the plea to the jurisdiction with respect to their claims regarding violations of their state equal-protection and due-course-of-law rights. HMEPS asserts that it retains its immunity from suit for these claims because, as pled, the claims are not viable.

## A.     Equal-Protection Claim

In their amended petition, Plaintiffs Klumb, McClelland, and Montejano alleged as follows in support of their equal protection claim:

> The Texas Constitution provides that all people "have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. 1, § 3. HMEPS is treating [Plaintiffs Klumb, McClelland, and Montejano] differently than other individuals such as those who work for Houston Zoo, Inc., Houston READ Commission, Miller Outdoor Theater Advisory Board, Inc., and Houston Parks Board, who have left employment with the City to work with separate legal entities that had business relationships with the City [and are now nonetheless receiving retirement benefits from HMEPS]. As a

37

result of the disparate treatment, [Plaintiffs Klumb, McClelland, and Montejano] have been damaged.

We analyze equal-protection challenges asserted under the state constitution in the same manner as those claims asserted under the federal constitution. *City of Houston v. Johnson*, 353 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002)). Mirroring the federal constitution, the equal-protection clause of the Texas constitution directs governmental actors to treat all similarly situated persons alike. *Id.*; *see* TEX. CONST. art. 1, §3. When, as in this case, neither a suspect classification nor a fundamental right is involved, the alleged disparate treatment between similarly situated persons survives constitutional scrutiny if it is rationally related to a legitimate governmental purpose. *See Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 448 (Tex. App.—Austin 2011, pet. denied).

If the plaintiff's constitutional claim is facially invalid, the trial court must grant a political subdivision's plea to the jurisdiction asserting governmental immunity. *Johnson*, 353 S.W.3d at 504. Thus, if a plaintiff fails to plead a viable claim, a governmental defendant, such as HMEPS, retains immunity from suit for the alleged constitutional violations. *Id.* (citing *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 10–12 (Tex. 2011)).

Equal protection "does not demand for purposes of rational-basis review that a legislature or governing decision maker actually articulate at any time the

38

purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334 (1992). A governing decision maker "is not subject to courtroom fact-finding and [the decision] may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2102 (1993). "For equal protection purposes, government action has a rational basis if one can be conceived, regardless of whether the government had it in mind when it took the action complained of." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 675 (Tex. 2004) (citing *Owens Corning v. Carter*, 997 S.W.2d 560, 581 (Tex. 1999)). A court must uphold the challenged governmental action if it can conceive of any rational basis for the action. *See Owens Corning*, 997 S.W.2d at 581. We need not review each and every reason that the action is thought to be rational; we need only find one rational reason. *Garay v. State*, 940 S.W.2d 211, 217 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

Here, HMEPS asserts that it had a rational basis for its decision to treat the plaintiffs as City employees, who are not entitled to begin receiving retirement benefits and who must continue to contribute to the pension system. It avers that it has "a legitimate interest in preserving all sources of pension funding by assuring that the City meets its full obligations to HMEPS." It asserts that "[t]he Board's decision advances that interest." HMEPS contends, "If the City stops contributing

to HMEPS on behalf of Department employees, HMEPS will have less money to satisfy future benefit obligations. By correctly recognizing that Klumb and his co-workers are still covered employees, the Board avoided a threat to HMEPS's funding."

We agree with HMEPS that preservation of funding sources is a rational basis for the alleged disparate treatment in this case. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 174–75, 101 S. Ct. 453, 459 (1980) (recognizing that preservation of pension funds is valid reason to treat pensioners differently). For this reason, we conclude that Plaintiffs Klumb, McClelland, and Montejano have not pled a viable equal-protection claim. Thus, HMEPS retains its immunity from suit. We hold that the trial court correctly granted HMEPS's plea to the jurisdiction on the equal-protection claim.

We overrule Plaintiffs' seventh and eighth issues.

## B. Due Course of Law

With respect to their due course of law claim, Plaintiffs allege as follows:

> The Texas Constitution also provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the course of the law of the land." TEX. CONST. art. l, § 19. Here, the [Plaintiffs Klumb, McClelland, and Montejano] have a right to receive payments from their vested retirement accounts upon their termination of employment with the City. HMEPS refuses and continues to refuse to pay the benefits to which the [Plaintiffs Klumb, McClelland, and Montejano] have a vested right to receive. This is an unlawful taking in violation of Due Course of Law.

40

> Plaintiffs have a right to contribute their salaries only to organizations and entities of which they are a part. HMEPS is attempting to seize five percent of their salaries. This is an unlawful taking in violation of Due Course of Law.

HMEPS contends that Plaintiffs do not have a vested property interest at stake. Plaintiffs' due-course-of-law claims require the existence of such a protected right. *See Combs v. City of Webster*, 311 S.W.3d 85, 92 (Tex. App.—Austin 2009, pet. denied) (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560–62 (Tex. 1985) (involving procedural and substantive due process claims); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 111 (Tex. App.—Dallas 2006, pet. denied) (same)). If HMEPS is correct in its assertion that Plaintiffs have failed to allege a vested property interest, Plaintiffs' due-course-of-law claims have no merit, and the trial court properly granted HMEPS's plea to the jurisdiction regarding those claims. *See id.*

According to the amended petition, the first property interest at stake for Plaintiffs Klumb, McClelland, and Montejano is payment from their retirement accounts on their termination of employment with the City. HMEPS correctly points out that a pensioner in a statutory pension plan does not have a vested right to his pension. *Reames v. Police Officers' Pension Bd.*, 928 S.W.2d 628, 632 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see City of Dallas v. Trammell*, 101 S.W.2d 1009, 1012–13 (Tex. 1937) (holding that, because state employee

41

pension plans are from purely statutory origins, pensioner's right to receive monthly payments from statutory pension fund was subordinate to right of legislature to completely abolish pension fund or diminish accrued benefits of pensioner under the plan); *see also Duckett v. Bd. of Trs.*, 832 S.W.2d 438, 442 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Here, Plaintiffs Klumb, McClelland, and Montejano have no vested property right in the retirement benefits at issue. The amended petition affirmatively negates the existence of jurisdiction over their due-course-of-law claim asserted in relation to those benefits. *See Combs*, 311 S.W.3d at 94.

Plaintiffs also allege that HMEPS "is attempting to seize five percent of their salaries" as monthly contributions into the pension fund. They assert that they have a property right in these contributions. HMEPS explains that the City, not the employees, pay contributions to HMEPS. HMEPS cites the Benefits Handbook, which was offered by Plaintiffs into evidence. The handbook explains that HMEPS members do not pay employee contributions to HMEPS. Rather, the City pays the contribution directly from its treasury to HMEPS. This is also reflected in Article 6243h, section 8(c), which provides that "the city shall pay the pickup contributions to the pension system from the same source of funds that is used for paying salaries to the members. The pickup contributions are in lieu of

42

contributions [by the members]." TEX. REV. CIV. STAT. art. 6243h, § 8(c) (Vernon 2010).

HMEPS also points to *Devon v. City of San Antonio*, which explains as follows:

> [D]eductions withheld from [public employees'] wages and paid into the pension fund never belonged to [them], but remained public money used for a public purpose. They were not first segregated from the public funds so as to become [the employees'] private property and then paid into the pension fund; rather, the deductions were "set aside from one public fund and turned over to another" and are no less public money after the payment into the pension fund than before.

443 S.W.2d 598, 600 (Tex. Civ. App.—Waco 1969, writ ref'd) (quoting *Trammell*, 101 S.W.2d at 1013).

We agree with HMEPS that the jurisdictional evidence shows, as a matter of law, that the Plaintiffs do not have a property right in the contributions made to the pension system. *See id.*; *see also Miranda*, 133 S.W.3d at 226–28. Accordingly, Plaintiffs have failed to assert a viable due-course-of law claim, and HMEPS retains its immunity from suit regarding that claim. We hold that the trial court properly granted HMEPS's plea to the jurisdiction on Plaintiffs' due-course-of law claims.

We overrule Plaintiffs' fifth and sixth issues. We also overrule Plaintiffs' first issue, generally challenging the granting of the plea to the jurisdiction.

43

## Motion for Continuance

In their tenth issue, Plaintiffs assert that the trial court abused its discretion when it denied their motion for continuance. Plaintiffs sought a continuance of the hearing on the plea to the jurisdiction to permit them to conduct additional jurisdictional discovery.

We apply an abuse-of-discretion standard of review to a trial court's decision on whether to grant a continuance of a plea-to-the-jurisdiction hearing to allow additional discovery. *Garcia v. Kubosh*, 377 S.W.3d 89, 113 (Tex. App.—Houston [1st Dist.] 2012, no pet.). An appellate court may reverse for abuse of discretion only if it finds that the trial court's decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 162 (Tex. 2004). There is no abuse of discretion in a case in which the trial court could reasonably conclude that additional discovery was unnecessary and irrelevant to the legal issues in the case. *Id.* This is such a case.

As seen in the discussion of the preceding issues, the determination of the jurisdictional issues in this case is based on the statutory language, the allegations in Plaintiffs' pleadings, and basic documents, such as the minutes from the board meetings, the Resolution, the Pension Plan Document, and the Meet and Confer

44

Agreement. The Benefits Handbook, mentioned with respect to determining Plaintiffs' due-course-of-law claim, was offered by Plaintiffs.

Plaintiffs contend that they sought a continuance so that they could depose each Trustee about his or her affidavit in which each testified that the board had interpreted, not amended, the definition of employee. Plaintiffs also indicate that they wanted a continuance to seek documents and information relating to the Trustees' decision-making process with respect to interpreting the definition. However, as discussed *supra*, the subjective views of the board members are not material to the legal determination of whether they acted ultra vires in contravention of the statute.

Plaintiffs further indicate that they desired to conduct discovery pertaining to whether employees of other legal entities are similarly situated to them. As discussed, Plaintiffs' equal-protection claim fails on the rational-basis analysis without considering whether other persons receiving retirement benefits are similarly situated.

None of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea. *See id.* Plaintiffs failed to demonstrate that additional discovery was necessary. *See id.* We hold that the trial court did not abuse its discretion in denying Plaintiffs' motion for continuance.

We overrule Plaintiffs' tenth issue.

45

## Conclusion

We affirm the judgment of the trial court granting HMEPS's and the Trustees' plea to the jurisdiction and dismissing Appellants' claims.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

46