**Reversed and Rendered in part, Remanded in Part, Affirmed in Part, and Opinion filed November 22, 2016.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-15-00865-CV

---

## CITY OF HOUSTON, SYLVESTER TURNER, KELLY DOWE, CHRIS BROWN, BRENDA STARDIG, JERRY DAVIS, ELLEN COHEN, DWIGHT BOYKINS, DAVE MARTIN, STEVE LE, GREG TRAVIS, KARLA CISNEROS, ROBERT GALLEGOS, MIKE LASTER, LARRY GREEN, MIKE KNOX, DAVID ROBINSON, MICHAEL KUBOSH, AMANDA EDWARDS, AND JACK CHRISTIE, Appellants

### V.

## HOUSTON MUNICIPAL EMPLOYEE PENSION SYSTEM, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2015-35252**

---

### O P I N I O N

Appellee Houston Municipal Employees Pension System ("HMEPS") brought a verified petition against appellants City of Houston (the "City"), Annise

D. Parker, Kelly Dowe, Ronald C. Green, Brenda Stardig, Jerry Davis, Ellen Cohen, Dwight Boykins, Dave Martin, Richard Nguyen, Oliver Pennington, Ed Gonzalez, Robert Gallegos, Mike Laster, Larry Green, Stephen Costello, David Robinson, Michael Kubosh, C.O. "Brad" Bradford, and Jack Christie (collectively, the "City appellants"[1]) for writs of mandamus compelling the City appellants (1) to provide requested employee information, as required by article 6243h, "Municipal Pension System in cities of 1,500,000 or more," and the Texas Public Information Act ("TPIA"); and (2) to allocate funding in the City budgets to cover HMEPS members and to make pickup payments on their behalf, as required by article 6243h. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h (West 2010); Tex. Gov't Code Ann. §§ 552.221, 552.321 (West 2012). The City appellants filed a plea to the jurisdiction, which the trial court denied. The City appellants appealed.

Because we determine that the trial court erred in denying the City appellants' plea to the jurisdiction regarding the City's alleged failures to comply with article 6243h, we reverse and render judgment on those claims. With regard to HMEPS's mandamus claims against the City officials regarding their alleged failures to fund pension contributions, we reverse and remand with instructions for the trial court to provide HMEPS a reasonable opportunity to properly plead *ultra vires* claims. We affirm the trial court's denial of the City appellants' plea to the jurisdiction regarding the City officials' alleged failures to comply with the information disclosure requirements of article 6243h. With regard to alleged failures to comply with the TPIA, we affirm the trial court's denial of the City

---

[1] Pursuant to Texas Rule of Appellate Procedure 7.2(a), we have substituted the names of the current City officers as Sylvester Turner for Mayor Parker, Chris Brown for Controller Green, and Steve Le, Greg Travis, Karla Cisneros, Mike Knox, and Amanda Edwards, for Councilmembers Nguyen, Pennington, Gonzalez, Costello, and Bradford.

appellants' plea to the jurisdiction as to the City, and we reverse the denial of the City appellants' plea and render judgment as to such claims against defendants other than the City or its officer for public information.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the City announced plans to remove employees from its Convention and Entertainment Facilities Department, which historically had operated and maintained municipal convention and entertainment facilities, and to outsource these services and employees to local government corporation Houston First Corporation ("HFC").  In response, HMEPS's board of trustees adopted a resolution that the definition of "employee" in article 6243h includes full-time employees of local government corporations controlled by the City, upon a determination by the board's External Affairs Committee.

The City then formed nonprofit corporation Houston First Foundation ("HFF") and indicated that HFF would employ all the City employees who were to have joined HFC.  The HMEPS board adopted another resolution reiterating its construction of "employee" and announcing that employees of any entity controlled directly or indirectly by the City are considered employees for purposes of membership in the pension system unless the External Affairs Committee expressly determines otherwise.

Then the City formed another nonprofit corporation called Convention and Cultural Services, Inc. ("CCSI"), to operate in conjunction with HFC whereby CCSI would employ and lease the workforce to its only client HFC.  The External Affairs Committee issued a resolution that these leased workers would remain as members of the pension plan as part of a control group.

The City transferred its convention and entertainment services and

3

employees to HFC and CCSI accordingly. Certain individuals who began working for CCSI but otherwise were eligible to retire sought retirement benefits from HMEPS. Other individuals working for CCSI sought to defer retirement status and to stop having contributions to HMEPS deducted from their salaries. After the External Affairs Committee concluded that these individuals all remained employees and members of the pension system, such individuals (the "*Klumb* plaintiffs*") filed suit against HMEPS and its board (the "HMEPS defendants"), alleging *ultra vires* and breach-of-contract claims.[2] The City joined this suit as to the *ultra vires* claims.

The HMEPS defendants filed a plea to the jurisdiction, arguing that article 6243h precludes judicial review of the HMEPS board's "final and binding" decisions interpreting the statute and determining eligibility for membership and benefits, and that sovereign immunity bars the breach-of-contract claims because violation of a meet-and-confer agreement ("MCA") cannot serve as an *ultra vires* claim. The trial court granted the HMEPS defendants' plea and dismissed the *Klumb* plaintiffs' and the City's claims, and the First Court of Appeals affirmed that decision. *Klumb v. Houston Mun. Employees Pension Sys.*, 405 S.W.3d 204, 228 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 458 S.W.3d 1 (Tex. 2015).

On review, the Texas Supreme Court affirmed. The *Klumb* Court concluded that as a matter of law the HMEPS board did not act *ultra vires* in issuing its resolutions construing the term "employee" and instead acted within its unreviewable, discretionary authority to interpret the statute under article 6243h. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(x),[3] (y)[4]; *Klumb*, 458 S.W.3d at 10–

---

[2] The *Klumb* plaintiffs also alleged various constitutional violations not at issue here.

[3] Under section 2(x):

The pension board shall manage the pension fund under this Act and under the

4

11 ("The breadth of the pension board's authority under Article 6243h is inescapable. . . . Courts may not review the board's actions absent a manifest conflict with express statutory terms.").

Next, the *Klumb* Court determined that there were no viable *ultra vires* claims in connection with the HMEPS board's delegation of decision-making authority to the External Affairs Committee allegedly in violation of a July 2011 MCA between HMEPS and the City. 458 S.W.3d at 12. The *Klumb* Court noted that article 6243h expressly permits such delegation. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 3(k)[5]; *Klumb*, 458 S.W.3d at 12. The *Klumb* plaintiffs and the City

---

Internal Revenue Code of 1986, as amended, and may:

(1) adopt, for the administration of the pension fund, written rules and guidelines;

(2) interpret and construe this Act and any summary plan, descriptions, or benefits procedures, except that each construction must meet any qualification requirements established under Section 401, Internal Revenue Code of 1986, as amended;

(3) correct any defect, supply any omission, and reconcile any inconsistency that appears in this Act in a manner and to the extent that the pension board considers expedient to administer this Act for the greatest benefit of all members;

(4) determine all questions, whether legal or factual, relating to eligibility for membership, service, or benefits or relating to the administration of the pension fund to promote the uniform administration of the pension fund for the benefit of all members and retirees; and

(5) establish and maintain records necessary or appropriate for the proper administration of the pension fund.

Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(x).

[4] Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(y) ("The determination of any fact by the pension board and the pension board's interpretation of this Act are final and binding on any interested party, including members, deferred participants, retirees, eligible survivors, beneficiaries, and the city.").

[5] Tex. Rev. Civ. Stat. Ann. art. 6243h, § 3(k) ("On majority vote of the trustees, the pension board may allocate among the trustees the responsibilities of the pension board under this Act and may designate any person who is not a trustee, including the executive director and other employees, to carry out the responsibilities of the pension board under this Act.").

5

argued that the July 2011 MCA amended the statute and divested the board of its delegation power, and therefore because the resolution violated the terms of the MCA, it was *ultra vires*. *Klumb*, 458 S.W.3d at 12. The *Klumb* Court rejected this argument. *Id.* In doing so, the Court explained, regardless of whether the parties deem the contract to amend the statute, noncompliance with a contract such as the MCA does not give rise to an *ultra vires* claim, but rather presents a breach-of-contract claim that cannot be maintained absent a waiver of sovereign immunity, which was not alleged or supported on the record before the Court. *See id.* The Court concluded that the *Klumb* plaintiffs and the City failed to plead actionable claims against the HMEPS defendants. *Id.* at 17.

In April 2015, HMEPS sent a letter to Dowe, the Director of the City's Finance Department, and Dawn Ullrich, who was the Director of the City's Convention and Entertainment Facilities Department as well as President of HFC and HFF and Director of CCSI, requesting that they designate a person who would provide employee and payroll information to HMEPS. HMEPS also requested various information for HFC, HFF, and CCSI employees. In May 2015, HMEPS sent two additional requests—one to Mayor Parker and one to Ullrich. According to HMEPS, the City appellants refused to provide all of the requested information. HMEPS further alleged that the City's fiscal year 2016 budget failed to allocate to HMEPS the necessary finds to cover the HFC, HFF, and CCSI employees and to account for the pickup contributions.

In June 2015, HMEPS filed suit against the City appellants.[6] HMEPS petitioned for a writ of mandamus to compel the City appellants to provide statutorily-required and requested employee information now and in the future.

---

[6] HMEPS also filed claims against HFC, HFF, CCSI, and Ullrich. The trial court later granted HMEPS's motion for a partial nonsuit without prejudice as to these defendants.

HMEPS alleged that its board's interpretation of the term "employee" was final and binding on the City under article 6243h and *Klumb*. HMEPS alleged that by refusing to provide information on the HFC, HFF, and CCSI employees the City appellants failed to perform a purely ministerial function required by article 6243h and acted *ultra vires*. HMEPS also alleged that the City appellants violated the TPIA by refusing to provide the requested employee information.

In addition, HMEPS petitioned for a writ of mandamus to compel the City appellants to allocate funding in the current and all future proposed City budgets to include the contributions owed for HFC, HFF, and CCSI employees' salaries as members of the pension system and to make pickup payments on their behalf. HMEPS alleged that article 6243h requires the City to make periodic payments to the pension fund in an amount based on the combined salaries of all the "members" of the system, as judicially confirmed to include all HFC, HFF, and CCSI employees. Further, HMEPS alleged that article 6243h requires the City to pick up and pay any biweekly contributions made by the contributing members of the fund. By refusing to perform such purely ministerial acts required by article 6243h, HMEPS alleged that the City appellants acted *ultra vires*. HMEPS sought a writ a mandamus to compel the City appellants to allocate funding in the current budget for the statutorily-required payments of 27.36% of the payroll of the HFC, HFF, and CCSI employees, to make such allocated payments, and to make such allocations and payments in the future. According to HMEPS, the manner for calculating the City's contributions to HMEPS comes from a July 2011 MCA entered into between the City and HMEPS, which "agreement is enforceable and binding" on the City under article 6243h.

The City filed a counterclaim against HMEPS and a third-party action against the members of the HMEPS board. The City alleged that HMEPS

breached the MCA by seeking to impose a unilateral amendment of the MCA retroactively and by delegating authority to the External Affairs Committee. The City alleged it was entitled to a declaratory judgment that HMEPS breached the MCA, that HMEPS cannot enforce any alleged duties regarding pension contributions under the MCA which arise from its own breach, and that the City has not breached the MCA. The City also alleged *ultra vires* claims to correct HMEPS's violation of its statutory obligations related to its attempts to change the definition of "employee." In the alternative, conditioned on HMEPS's prevailing on its claims, the City requested declaratory and injunctive relief to prohibit inverse condemnation. The City further requested declaratory and injunctive relief to correct actions that are arbitrary and capricious, adversely affect property rights, or otherwise violate constitutional rights. The City petitioned for mandamus relief to correct clear abuses of discretion by HMEPS and its board. Finally, the City alleged that HMEPS and its board violated the Open Meetings Act.

The City appellants answered and, among other defenses, pleaded immunity from suit as a jurisdictional bar and lack of standing. HMEPS and its board answered and, among other defenses, likewise pleaded immunity from suit and from liability.

It is the City's immunity at issue here. The City appellants filed a plea to the jurisdiction arguing:

- that HMEPS's claims against the City for alleged *ultra vires* acts under article 6243h and the TPIA were barred because such claims are only allowed against government officials (issues I(f) & I(g))[7];

---

[7] Because the City appellants' plea arguments are organized in a slightly different manner on appeal, our numbers correspond to the appellate briefing. "I" and "II" reference the City appellants' two issues, and "a" through "h" reference the eight subissues in their first issue.

8

- that HMEPS's claims seeking statutory contributions (a) as calculated based on the MCA formula were barred because contractual obligations cannot be the basis of *ultra vires* claims and (b) for past periods were barred because only prospective relief is allowed under the *ultra vires* exception to immunity (issues I(a) & I(b));

- that HMEPS's claims seeking contributions and disclosure of information were barred because article 6243h is too vague and imprecise to create a ministerial duty (issue I(d));

- that HMEPS's claims seeking budgetary appropriation and allocation were barred as discretionary acts (issue I(e));

- that to the extent HMEPS requests enforcement of article 6243h rather than the MCA, HMEPS's claims seeking contributions were barred because it cannot prove a statutory violation (issue I(c));

- that HMEPS's claims seeking disclosure of information were barred because (a) HMEPS modified its request under a rule 11 agreement and the City appellants have not refused to provide requisite information in their possession and (b) HMEPS should not have nonsuited the entities in actual possession of the requested information and, regardless, could use third-party discovery or TPIA requests to obtain information from CCSI (issue I(h)); and

- that HMEPS has no standing under article 6243h (issue II).

To their plea, the City appellants attached: article VIII, "City Controller," of the City Charter; an email dated June 24, 2015, from the City attorney to trial counsel for HMEPS regarding a spreadsheet on employees who worked for the Convention and Entertainment Facilities Department; and the articles of

9

incorporation of Houston Convention Center Hotel Corporation.

HMEPS filed its opposition to the City appellants' plea, arguing *Klumb* made clear that the HMEPS board had the authority to define HFC, HFF, and CCSI employees as City "employees" for purposes of membership in the fund and therefore the City must comply with article 6243h and the TPIA with regard to these individuals. HMEPS contended that *ultra vires* claims are excepted from governmental immunity and that section 3(n) of article 6243h specifically provides that MCAs are binding and enforceable against the City. HMEPS also emphasized that the City appellants asserted counterclaims invoking the trial court's jurisdiction for their own benefit.

To its opposition, HMEPS attached: the May 2011 plea-to-the-jurisdiction hearing from *Klumb*; the HMEPS 2014 actuarial valuation report; corporate documents of the Houston Convention Center Hotel Corporation, later renamed HFC; corporate documents of HFF; corporate documents of CCSI; the 2011 Interlocal Agreement between the City and Houston Convention Center Hotel Corporation; and the 2011 Services Agreement between HFC and CCSI.

The trial court held a hearing on the City appellants' plea and issued an order denying the plea. The City appellants timely appealed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2015).

## II.   ANALYSIS

The City appellants bring two issues. In the first issue, presented in eight subissues, they contend that the trial court has no subject-matter jurisdiction because all of HMEPS's claims against the City appellants are barred by immunity. In the second issue, the City appellants assert that the trial court has no jurisdiction because HMEPS has no standing under article 6243h to bring this suit.

10

## A. Governing law

Governmental immunity protects State agencies and political subdivisions, as well as officers and employees acting within their official capacity, from lawsuits for damages unless immunity has been waived. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 & n.1 (Tex. 2006); *Sumner v. Bd. of Adjustment of City of Spring Valley Vill.*, No. 14-15-00149-CV, 2016 WL 2935881, at *9 (Tex. App.—Houston [14th Dist.] May 17, 2016, pet. denied) (mem. op.). Immunity generally deprives courts of subject-matter jurisdiction. *Reata*, 197 S.W.3d at 374; *Sumner*, 2016 WL 2935881, at *9.

Governmental immunity does not, however, bar *ultra vires* claims seeking to compel a governmental officer to comply with statutory or constitutional provisions. *See Heinrich*, 284 S.W.3d at 371–72. To fall within this *ultra vires* exception, the party filing a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *See id*. at 372. Such a suit, in effect, does not seek to alter government policy; it seeks to reassert the control of and enforce existing policy of the governmental entity. *Id.* at 372. Because these suits are not considered to be suits against the governmental entity, they must be brought against the allegedly responsible government actors in their official capacities. *Id.* at 373. The exception permits only prospective declaratory or injunctive relief restraining *ultra vires* conduct, as opposed to retrospective monetary relief. *Id.* at 374–77; *Sumner*, 2016 WL 2935881, at *9.

Because "immunity from suit implicates courts' subject-matter jurisdiction," *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012), it "is properly asserted in a plea to the jurisdiction," *Tex. Dep't of Parks & Wildlife v. Miranda*, 133

11

S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Klumb*, 458 S.W.3d at 8. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Heinrich*, 284 S.W.3d at 378. In doing so, we construe the pleadings liberally in the pleader's favor and look to his intent. *Id.* Only if the pleadings affirmatively negate jurisdiction should the plea to the jurisdiction be granted without affording the plaintiffs an opportunity to replead. *Miranda*, 133 S.W.3d at 226–27. The pleader "deserves the opportunity to amend his pleadings if the defects can be cured." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227. The movant must meet the summary-judgment standard of proof by conclusively demonstrating that the trial court lacks subject-matter jurisdiction. *See id.* at 227–28. We credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the factfinder. *Id.* at 227–28. However, if relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Id.*

## B. HMEPS's alleged *ultra vires* claims related to the City's failures to fund contributions and make pickup payments for HFC, HFF, and CCSI employees

We first consider the City appellants' subissues addressing HMEPS's *ultra vires* claims related to the City's not funding contributions or picking up payments for HFC, HFF, and CCSI employees.

12

### 1. HMEPS may not bring *ultra vires* claims involving noncompliance with the MCA.

In issue I(a), the City appellants contend that although HMEPS alleges the City appellants failed to comply with the City's contribution requirements under article 6243h, HMEPS in fact seeks to compel the 27.36% contribution rate, which is not specified by statute, but instead is required by the July 2011 MCA. The City appellants argue that mandamus suits against officials are authorized only where, unlike here, the official's duty is "clearly fixed and required by the law." *See Oney v. Ammerman*, 458 S.W.2d 54, 54 (Tex. 1970). The City appellants likewise contend that *ultra vires* suits against officials must require them "to comply with constitutional or statutory provisions." *See Heinrich*, 284 S.W.3d at 372. The City appellants contend that *Klumb* "expressly rejected any notion that the [MCA] is enforceable through anything other than contract claims"; that is, *Klumb* makes clear the MCA is enforceable only through contract claims, not mandamus or *ultra vires* claims. *See* 458 S.W.3d at 12. According to the City appellants, because HMEPS seeks to enforce contractual duties, it failed to allege any valid mandamus or *ultra vires* claims.

HMEPS responds it properly alleged that the City appellants failed to perform purely ministerial acts mandated by article 6243h and therefore the trial court correctly determined it has jurisdiction over this *ultra vires* action seeking mandamus relief. With regard to the MCA, HMEPS argues that in section 3(n) of article 6243h the Legislature authorized HMEPS and the City to agree to a lower rate than otherwise calculated pursuant to section 8(d), which agreements are "enforceable against and binding" on the City. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 3(n); *Klumb,* 458 S.W.3d at 7, 11. HMEPS asserts that "it only seeks payment of the lower MCA rate to which the City agreed would be its Section 8(d) statutory payment obligation." HMEPS maintains *Klumb* only held that no waiver

of immunity was alleged or supported on the record before the Court as to HMEPS for the City's claim that HMEPS's actions delegating employee decisions to the External Affairs Committee violated the MCA. *See* 458 S.W.3d at 12.

We consider HMEPS's first amended verified petition for writs of mandamus to determine if HMEPS has alleged facts affirmatively demonstrating the trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. In its petition, within the "Statement of Facts," HMEPS alleged:

> Among the City's statutory obligations, Article 6243h requires the City to make periodic payments to the pension fund in an amount that is based on the combined salaries of HMEPS's "members." [Tex. Rev. Civ. Stat. Ann. art. 6243h,] § 8(d). The manner for calculating the City's contributions to HMEPS may be found in an Amended and Restated Meet and Confer Agreement dated July 1, 2011 and entered into between HMEPS and the City.

HMEPS further alleged:

> Most importantly, Defendants are failing to make the statutorily required payments of 27.36% of the payroll of the HFC, HFF, and CCSI employees to HMEPS, as reflected in the City's 2015-2016 Budget, and to pay the obligatory pick up contributions.

Within the "Causes of Action," HMEPS alleged:

> Article 6243h, however, requires the City to make periodic payments to the pension fund in an amount that is based on the combined salaries of HMEPS's "members," who have been judicially confirmed to include all HFC, HFF, and CCSI employees. Tex. Rev. Civ. Stat. Ann., art 6243b § 8(d). It also requires the City to pick up and pay any biweekly contributions made by the contributing members of the pension fund. *Id.* at § 8(a), (c). Thus, Defendants have no discretion to exclude contributions for HFC, HFF, and CCSI employees in the current or the future proposed City budgets or to forego their obligation to pick up payments made on their behalf. By failing to perform these purely ministerial acts required by Article 6243h, Defendants are acting *ultra vires*.

14

[] Consequently, HMFPS seeks a writ of mandamus compelling Defendants to allocate funding in the current City budget to provide the statutorily required payments of 27.36% of the payroll of the HFC, HFF, and CCSI employees, to make such payments to HMEPS in accordance with the allocation, to include in all future proposed City budgets the contributions owed for HFC, HFF, CCS1 employees' salaries as members of HMEPS, and to pick up and pay any biweekly contributions made on their behalf.

Within the "Request for Expedited Consideration," HMEPS alleged:

This case involves straightforward application of unambiguous ministerial statutory duties. Section 8(d) of Article 6243h unambiguously provides that the City "shall" contribute to HMEPS an amount that is based on the combined salaries of HMEPS's "members." Section 8(c) also states that the City "shall" pay pick up contributions made by the contributing members of the pension fund.

Section 8(c) of article 6243h provides:

The employer shall pick up the contributions required of group A members[8] by Subsection (a)[9] of this section for all salaries earned after the effective date of this Act. The city shall pay the pickup contributions to the pension system from the same source of funds that is used for paying salaries to the members. The pickup contributions are in lieu of contributions by group A members. The city may pick up those contributions by a deduction from each group A member's salary equal to the amount of the member's contributions picked up by the city. Members may not choose to receive the contributed amounts directly instead of having the contributed amounts paid by the city to the pension system. An accounting of

---

[8] *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 5(b) (describing conditions of group A membership in pension system).

[9] Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(a) ("Each group A member of the pension system shall make monthly contributions during employment in an amount determined by the pension board and expressed as a percentage of salary. The contributions shall be deducted by the employer from the salary of each member and paid to the pension system for deposit in the pension fund.").

member contributions picked up by the employer shall be maintained, and the contributions shall be treated for all other purposes as if the amount were a part of the member's salary and had been deducted under this section. Contributions picked up under this subsection shall be treated as employer contributions in determining tax treatment of the amounts under the Internal Revenue Code of 1986, as amended.

Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(c). Section 8(d) provides:

The city shall make periodic payments into the pension fund in an amount equal to the percentage contribution rate multiplied by the combined salaries of all group A and group B[10] members of the pension fund. The contribution rate, expressed as a percentage, shall be based on the results of actuarial valuations made at least every three years. The city's contribution rate shall consist of the normal cost plus the level percentage of salary payments required to amortize the unfunded actuarial liability over a period of 40 years from January 1, 1983, computed on the basis of an actuarial reserve funding method approved by the pension board. Notwithstanding any other provision of this Act, the city's contribution rate, when added to any contributions with respect to a qualified governmental excess benefit arrangement maintained in accordance with Section 24 of this Act, may not be an amount less than the greater of 10 percent of the combined salaries of all members or two times the contribution rate of group A members as provided in Subsection (a) of this section.

*Id.* § 8(d).

Where the law prescribes and defines the duty to be performed with precision and certainty as to leave nothing to the exercise of discretion or judgment, an act is ministerial and subject to mandamus. *See State Bar of Tex. v. Heard*, 603 S.W.2d 829, 832 (Tex. 1980). The plain language in article 6243h describing the City's contribution actions reflects ministerial as opposed to

---

[10] *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 5(c) (describing conditions of group B membership in pension system).

discretionary duties. By their usage of the term "shall,"[11] sections 8(c) and 8(d) mandate actions by the City related to paying pickup contributions to the pension system and to making periodic payments into the pension fund at the described contribution rate. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(c), (d).

Section 8(c) mandates that the City pay its pickup contributions from the same source of funding used for paying salaries to the members. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(c). Section 8(d) requires that the contribution rate be based on actuarial valuations made at least every three years and mandates that the rate "shall consist of the normal cost plus the level percentage of salary payments required to amortize the unfunded actuarial liability over a period of 40 years from January 1, 1983, computed on the basis of an actuarial reserve funding method approved by the pension board." *See id.* § 8(d). Article 6243h does not afford the City discretion or judgment to determine whether these contribution duties exist. *See Heard*, 603 S.W.2d at 832. Nor does article 6243h afford the City discretion or judgment to refuse to comply with these duties.

HMEPS alleged the *Klumb* Court unanimously held that "the pension board acted within the scope of its broad statutory authority in construing the term 'employee.'" 458 S.W.3d at 4. Although the City appellants insist the *Klumb* Court did not rule that the *Klumb* plaintiffs were "members" of HMEPS under article 6243h, HMEPS's resolutions defining "employees" for purposes of the plan were deemed final and binding. *See id.* at 11–12. As a result, under article 6243h, section 1(13), unless such "employees" are no longer "active" or are otherwise

---

[11] *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015) (stating, when construing section 49.223 of the Water Code, that "[t]he use of the word 'shall' evidences the mandatory nature of the duty imposed"); *Harris Cty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 92 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("The word 'shall' in section 22.01(a) is mandatory, not discretionary.").

ineligible to become members of the system under section 4 of the statute, they constitute "members." *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 1(13) ("'Member' means each active employee included in the pension system, except for an employee who is ineligible under Section 4 of this Act."), § 4 (outlining ineligible individuals). Under article 6243h, as long as these employees qualify as either group A or group B members under section 5, *see id.* § 5(b), (c), the City must meet the contribution duties outlined in sections 8(c) and 8(d) based on such employees, *see id.* § 8(c), (d).

In its petition, HMEPS alleged that "[b]y failing to perform these purely ministerial acts required by Article 6243h, [the City appellants] are acting *ultra vires*." HMEPS stated that it "seeks a writ of mandamus compelling [the City appellants] to allocate funding in the current City budget to provide the statutorily required payments of 27.36% of the payroll of the HFC, HFF, and CCSI employees, to make such payments to HMEPS in accordance with the allocation, to include in all future proposed City budgets the contributions owed for HFC, HFF, CCIS employees' salaries as members of HMEPS, and to pick up and pay any biweekly contributions made on their behalf." HMEPS alleged that the payment in the contribution rate of 27.36% is "statutorily required" but, within the same petition, also alleged that the manner for calculating the City's contributions is "found" in the MCA.

In its opposition to the City appellants' plea to the jurisdiction, HMEPS stated that section 8(d) provides the precise manner for calculating the actuarially required contribution ("ARC") rate. HMEPS also stated that the ARC rate was 27.38% but the City's contribution rate under the MCA was 27.36%.[12] HMEPS

---

[12] This difference between the ARC rate and the MCA rate is discussed in the HMEPS 2014 actuarial valuation report attached to HMEPS's plea opposition.

18

and the City could enter into the MCA and pursuant to its terms agree to an alternative arrangement "regarding pension issues and benefits" such as a reduced contribution rate that would be "enforceable against and binding on the city." *See id.* § 3(n); *Klumb*, 458 S.W.3d at 11. HMEPS contends this situation is analogous to *Heinrich*, where the Court explained that a suit alleging an official's *ultra vires* violation of a statute requiring that government contracts be performed in a certain way is not barred even though it necessarily involves a contract. *See* 284 S.W.3d at 371. We disagree. Nothing within article 6243h "requires that government contracts be made or performed in a certain way, leaving no room for discretion." *See id.* (discussing the rule arising out of *State v. Epperson*, 42 S.W.2d 228, 231 (Tex. 1931)). Section 8 does not require the making or performance of an MCA for the City to perform its statutorily-mandated contribution duties. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(c), (d). Section 3(n) does not require HMEPS to enter into MCAs with the City or that any MCAs be performed in a particular way. *See id.* § 3(n) ("[T]he pension board *may* enter into a written agreement . . . ." (emphasis added)).

As the *Klumb* Court stated, MCAs are written contracts and, even if the parties deem them to amend the statute, the failure to comply with such a contract does not give rise to *ultra vires* claims, which is the only type of claim HMEPS has brought with regard to the City's alleged refusal to allocate funding and pick up payments for the HFC, HFF, and CCSI employees. *See* 458 S.W.3d at 12. Just as a claim that HMEPS failed to comply with the MCA is a breach-of-contract and not an *ultra vires* claim, so too is a claim that the City failed to comply with the MCA. *See id.* To the extent that HMEPS's claims challenging the City's contribution failures are based on a contribution rate as found in the MCA, they cannot be brought *ultra vires*.

19

The trial court ruled in HMEPS's favor, so **HMEPS** had no occasion in the trial court to ask for an opportunity to amend its pleadings to cure any defect. *See Lazarides v. Farris*, 367 S.W.3d 788, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In this situation, the proper course of action is to reverse the trial court's order as to HMEPS's *ultra vires* claims related to the City's contribution failures and remand with instructions for the trial court to give HMEPS a reasonable opportunity to amend its pleadings in an attempt to properly plead these claims. *See id.*; *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95–96, 99 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Without expressing any opinion as to the merits of any such claims, we reverse the trial court's order as to these *ultra vires* claims, and we remand with instructions for the trial court to provide HMEPS a reasonable opportunity to properly plead *ultra vires* claims related to the City's contribution failures. *See Lazarides*, 367 S.W.3d at 804; *Olivares*, 316 S.W.3d at 95–96, 99.[13]

With this determination in mind, we consider the City appellants' other subissues related to the City's alleged contribution failures.

### 2. HMEPS does not seek retrospective monetary relief.

In issue I(b), the City appellants contend that they are immune from HMEPS's mandamus claims alleging *ultra vires* acts under article 6243h to the extent HMEPS seeks any relief for past periods. The City appellants argue that

---

[13] Although within this subissue the City appellants cite the MCA as contained within the summary-judgment record, the MCA was not attached to any of the parties' pleadings or plea-to-the-jurisdiction filings, nor was it incorporated as evidence within the proceedings on the City appellants' plea. The City appellants also cite language from HMEPS's summary-judgment motion. However, the trial court's order denying the City appellants' plea reflects that the only item pending before the court was the City appellants' plea and the items considered by the court when deciding the plea were the plea, HMEPS's opposition, the evidence, any reply, and the arguments of counsel.

HMEPS's pleadings are not clear as to whether it seeks relief for past periods, future periods, or both. Having liberally reviewed HMEPS's petition, we disagree that it is seeking any prohibited retrospective monetary relief through its *ultra vires* claims. In its petition, HMEPS expressly sought relief compelling the City appellants to allocate funding in the "current" budget, to make such payments, to include proper contributions in "future" budgets, and pick up and pay such contributions.[14] These do not constitute retrospective requests for relief. We overrule this subissue.

### 3. The City appellants failed to show that HMEPS cannot prove statutory contribution violations.

In issue I(c), the City appellants assert that HMEPS cannot prove that they violated the contribution and pickup provisions of the statute.

With regard to section 8(c), the City appellants argue that the HFC, HFF, and CCSI employees are employed and paid by those entities and therefore the sources of funds used to pay their salaries are necessarily accounts of those entities, not of the City. Having reviewed HMEPS's pleadings, while they refer to the individuals at issue as HFC, HFF, and CCSI employees and reference the "payroll" of those entities, the pleadings do not indicate the City's inability to pay contributions from the same source of funds used to pay the members' salaries. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 8(c). Moreover, the evidence cited by the City appellants—the article pertaining to payroll and employment tax reporting in the Service Agreement between HFC and CCSI—does not conclusively demonstrate that the City would not be able to use the same source of funds to make pension payments as is used by HFC to advance to or reimburse CCSI for its

---

[14] According to HMEPS's pleading, the City's fiscal year went through June 30, 2016. Therefore, the relief sought by HMEPS covers the now-current fiscal year.

employees' salaries.

With regard to section 8(d), essentially the City appellants contend HMEPS cannot prove a statutory violation because the provision does not cover a certain type of group member (group D) that only exists under the MCA. Nothing within HMEPS's pleadings precludes finding a violation of section 8(d) as to the HFC, HFF, and CCSI employees. Nor does the summary of plan provisions included in the HMEPS 2014 actuarial valuation report describing the various classes of plan members conclusively demonstrate that all the HFC, HFF, and CCSI employees at issue exclusively would fall outside the groups of members covered by section 8(d). We overrule this subissue.

### 4. Section 8 can be enforced by a mandamus suit alleging *ultra vires* acts.

We already have determined that article 6243h mandates the City perform certain contribution actions and does not provide any discretion to avoid such duties. Contrary to the City appellants' argument in issue I(d), we also do not agree that the statutorily-required duties in section 8(d) are too vague and imprecise to be enforceable by mandamus. Merely pointing out that section 8(d) could have included additional details does not render the statute either vague or imprecise with regard to the contribution duties it mandates on the City. A proven violation of a contribution duty clearly imposed on the City by article 6243h can lie in mandamus. We overrule issue I(d) with regard to *ultra vires* claims based on an alleged violation of section 8(d).

### 5. Failing to appropriate and allocate article 6243h-mandated funding is not discretionary.

In issue I(e), the City appellants argue that they are immune from HMEPS's mandamus claims under article 6243h alleging *ultra vires* acts regarding

appropriations and allocations because such acts are discretionary.  We disagree. HMEPS is not lodging a general complaint about the City's policies and decision-making with regard to setting its budget and allocating governmental funding. Rather, unlike in the cases cited by the City appellants,[15] HMEPS challenges the City's particular failures to properly allocate funding in the budget for contributions set and required by statute.  As discussed above, the City has no discretion under the statute to refuse its duties to pick up and pay required contributions to the fund.  We overrule this subissue.

## C. HMEPS's alleged claims related to the City's failures to provide information for HFC, HFF, and CCSI employees

### 1.  HMEPS may seek to compel the City to comply with the TPIA.

In issue I(g), the City appellants argue that HMEPS's mandamus claim against the City to compel information disclosure under section 552.321 of the TPIA is barred by immunity because such a claim cannot be brought against the City, but instead only against the pertinent governmental official, namely the "officer for public information."  *See* Tex. Gov't Code Ann. § 552.203 (West 2012) (outlining duties of officer for public information); *id.* § 552.221 (officer for public information shall promptly produce public information and describing ways for officer to comply); *see also id.* § 552.201 (West 2012) (identifying officer for public information).  The City appellants rely on *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668 (Tex. 1995), and *Guthrie v. Garcia*, 352 S.W.3d 307 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In *A & T Consultants, Inc. v. Sharp*, the Supreme Court of Texas granted

---

[15] *See, e.g., In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001); *Kassen v. Hatley*, 887 S.W.2d 4, 9–11 (Tex. 1994); *Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.*, 472 S.W.3d 426, 436 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

mandamus relief under section 552.321 of the TPIA against the party the high court concluded was the public-information officer[16] for the governmental body. *See* 904 S.W.2d at 672–73, 681. The *Sharp* Court concluded that the public-information officer was "the proper party" against whom mandamus relief should be sought under section 552.321. *See* 904 S.W.2d at 672–73, 681. The high court noted that, although the TPIA imposes the duties to release public information on the public-information officer, section 552.321 authorizes mandamus relief against the governmental body. *See id.* at 681. Though encouraging the legislature to resolve this incongruity, the *Sharp* Court stated that "[t]his discrepancy can be overlooked in most cases, and courts can treat petitions for writ of mandamus against governmental bodies and against public records officers interchangeably." *Id.* The *Sharp* Court stated that this general rule would not apply in cases in which the exact identity of the respondent matters for purposes of jurisdiction.[17] *Id.* The identity of the respondent in the case under review does not matter for purposes of jurisdiction; therefore, under the judicial dicta in *Sharp*, mandamus may be sought under section 552.321 of the TPIA against either the City of Houston or its public-information officer. *See id.*

In *Guthrie v. Garcia*, this court concluded that, if a choice had to be made

---

[16] Although the current version of the TPIA uses the term "officer for public information" in place of "officer for public records," the pertinent parts of the two versions of the TPIA are substantially similar; each statute authorizes mandamus relief against the "governmental body" while requiring the "officer for public records" or "officer for public information" to release the public information. *See* Tex. Gov't Code Ann. § 552.203, 552.204, 552.221, 552.321 (West 2012); Act of May 29, 1995, 74th Leg., R.S., ch. 1035, §§ 2, 14, 15, 24, 1995 Tex. Gen. Laws 5127, 5128, 5133–34, 5140. For ease of reference, we use the term "public-information officer" to refer to the "officer for public records" under the version of the TPIA applicable in *Sharp* and to refer to the "officer for public information" under the current version of the TPIA.

[17] The *Sharp* Court addressed a jurisdictional issue as to mandamus actions against executive officers. *See Sharp*, 904 S.W.2d at 672–81. That issue was resolved by subsequent legislation. *See* Tex. Gov't Code Ann. § 552.321(b).

24

between seeking mandamus relief under section 552.321 against the public-information officer or seeking such relief against the governmental body, then the proper choice would be to seek relief against the public-information officer, based on the *Sharp* Court's statement that the officer for public information is "the proper party." *See* 352 S.W.3d at 309–10. In *Guthrie*, mandamus relief was sought only against the public-information officer, and this court noted the *Sharp* Court's statements that mandamus claims under section 552.321 against a governmental body generally would be equivalent to mandamus claims against that body's public information officer. *See* 352 S.W.3d at 309–10. The *Guthrie* court did not hold or state that mandamus claims under section 552.321 may not be asserted against a governmental body. *See id.*

Under the unambiguous language of section 552.321, the *Sharp* judicial dicta, and recent precedent from the Supreme Court of Texas, a requestor may file suit against a governmental body seeking the mandamus relief provided under this statute. *See* Tex. Gov't Code Ann. § 552.321; *Kallinen v. City of Houston*, 462 S.W.3d 25, 27–28 (Tex. 2015) (per curiam); *Sharp*, 904 S.W.2d at 681.

We overrule this subissue as to HMEPS's TPIA claim against the City of Houston. However, in its petition HMEPS did not name just the City as a defendant or respondent. Instead, HMEPS alleged that all the defendants' refusal to provide the requested employee information "constitutes violations of the TPIA" and sought a writ of mandamus as to all the defendants under section 552.321. But such TPIA mandamus claims only may be brought against the City or its public-information officer. Therefore, we sustain this subissue as to HMEPS's TPIA claims against defendants other than the City or its public-information officer.

25

**2. The City appellants failed to show that HMEPS cannot prove the City refused to provide statutorily-required information.**

In issue I(h), the City appellants contend that HMEPS's article 6243h and TPIA claims seeking to compel disclosure of information are barred by immunity because the City did not refuse to provide requested information and instead abided by the parties' rule 11 agreement. Further, the City appellants argue that HMEPS otherwise has adequate remedies to obtain this information from the nonsuited HFC, HFF, and CCSI.

Both HMEPS's petition and the plea record reflect that HMEPS twice requested by letter information from the City regarding the name, date of birth, social security number, address, date of hire, position at date of hire, Family Medical Leave Act usage, status under the Uniformed Services Employment and Reemployment Rights Act, any termination notifications, and any disability or death claims for the HFC, HFF, and CCSI employees. HMEPS's second request cited both article 6243h and the TPIA. HMEPS alleged that the City appellants refused to provide all of the requested information required by statute. HMEPS also alleged that the City appellants did not seek an opinion from the attorney general regarding disclosure.

Section 2(u) of article 6243h mandates that the City "shall provide full and timely information to the pension board about employees as reasonably required by the pension board to administer the pension fund and provide benefits properly, including information relating to the hiring of employees, members' service dates, compensation of members, members' deaths, and terminations of employment." Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(u).

As part of issue I(d), the City appellants contend that section 2(u) cannot be enforced through a mandamus suit alleging *ultra vires* claims because it is vague,

imprecise, and subject to the City's discretion. We disagree. While the HMEPS board's discretion is limited to requesting information that is "reasonably required" for its administration of the fund, the duty imposed on the City to fully and timely disclose such information is mandatory and not subject to refusal. *See id.* Moreover, inclusion of the phrase "information relating to" does not render the statute vague or imprecise, but instead illustrates the types and breadth of information HMEPS may seek.[18] *See id.* We overrule the remaining portion of issue I(d).

The TPIA mandates that "[a]n officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer." *See* Tex. Gov't Code Ann. § 552.221(a). The TPIA "shall be liberally construed in favor of granting a request for information." *Id.* § 552.001(b) (West 2012); *Sharp*, 904 S.W.2d at 675. A governmental body wishing to withhold information that it believes falls within one of the exceptions to disclosure must follow the steps outlined in the TPIA regarding requesting a decision from the attorney general. *See* Tex. Gov't Code Ann. § 552.301 (West 2012). If the governmental body does not follow these steps, then the requested information is presumed to be subject to required disclosure. *See id.* § 552.302 (West 2012). "[I]f the governmental body refuses to request an attorney general's decision . . . or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure," then the requestor may seek mandamus relief to compel such body to make the information available. *Id.*

---

[18] The information about the HFC, HFF, and CCSI employees HMEPS requested essentially tracked the examples provided in article 6243h. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(u) ("information relating to the hiring of employees, members' service dates, compensation of members, members' deaths, and terminations of employment").

§ 552.321(a).

After HMEPS filed its mandamus suit, HMEPS and the City entered into a rule 11 agreement that states "to the extent the City of Houston possesses the information, the City of Houston will provide the information requested in [the two letters]." The City appellants insist that the City complied with the parties' rule 11 agreement. However, even assuming the City's compliance, the rule 11 agreement expressly states that HMEPS did not waive "seeking the full relief sought in the petition." Therefore, HMEPS could pursue any outstanding requests and continue its article 6243h and TPIA disclosure claims.

Next, the City appellants argue "the City has no duty to provide any additional information that HMEPS seeks" because HMEPS already had this information for former City employees and the City would not have this information for HFC, HFF, and CCSI employees who were not former City employees. But neither the TPIA nor section 2(u) of article 6243h so constrains the City's statutory duties. The plain language of the statutes does not prohibit HMEPS from re-requesting information the City already may have provided or from insisting on as complete a production as possible from the City. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(u); Tex. Gov't Code Ann. § 552.221(a).

Although the City produced evidence that it did "not have going-forward data" on the employees at issue, we do not agree that the authorities cited by the City appellants foreclose HMEPS's mandamus suit under these circumstances.[19]

---

[19] In *Economic Opportunities Development Corp. of San Antonio v. Bustamante*, 562 S.W.2d 266, 267–68 (Tex. Civ. App.—San Antonio 1978, writ dism'd), the court of appeals affirmed the trial court's denial of mandamus relief after a trial on the merits where the trial court found sufficient evidence that the documents were no longer in the county commissioner's possession. And unlike in informal letter ruling No. OR2014-04271, the City appellants did not request a decision from the attorney general regarding whether the City is required to disclose HMEPS's requested information, much less allege in such request that the City did "not possess

28

Moreover, the TPIA broadly defines public information to "include information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business . . . for a governmental body and the governmental body has a right of access to the information." *See* Tex. Gov't Code Ann. § 552.002(a); *In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001). Evidence that the City does not have certain information does not necessarily mean that the City has no right to access such information.

Further, we reject the City appellants' attempts to avoid the City's statutory obligations because HMEPS also had sued (but then nonsuited) HFC, HFF, and CCSI. Section 2(u) does not state that the City has discretion to refuse to produce "full" information because another entity may possess relevant information. *See* Tex. Rev. Civ. Stat. Ann. art. 6243h, § 2(u). Nor does the TPIA require a requestor to sue or maintain any suit against any other entity in order to bring a mandamus action against a particular governmental body under section 552.321. *See* Tex. Gov't Code Ann. § 552.321(a).

Because the City appellants failed to conclusively establish that the trial court lacks jurisdiction over HMEPS's mandamus and *ultra vires* claims seeking the entirety of its requested information about the HFC, HFF, and CCSI employees, we overrule issue I(h).

---

any information responsive . . . to the request" like the PUC did in its request. *See* Op. Tex. Att'y Gen. No. OR2014-04271 (Tex. A.G.), 2014 WL 1573637, at *1 & n.2. Moreover, the Texas Supreme Court has indicated that, irrespective of whether a governmental body requests and receives a decision from the attorney general on disclosure, the trial court has jurisdiction under section 552.321(a) to consider whether the requested information is subject to disclosure. *See Kallinen*, 462 S.W.3d at 28; *Harris Cty. Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 68 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

**D. Remaining article 6243h issues**

**1. HMEPS may not allege article 6243h violations against the City.**

With regard to issue I(f), we agree that HMEPS cannot bring any of its *ultra vires* claims based on noncompliance with article 6243h through a mandamus action against the City, but rather only against and to compel action by the City's officials. *See Heinrich*, 284 S.W.3d at 372–73; *Anderson v. City of Four Points*, 806 S.W.2d 791, 793 (Tex. 1991). HMEPS does not otherwise point to any clear and unambiguous legislative waiver of the City's immunity in article 6243h or elsewhere for claims alleging a violation of article 6243h. We sustain this subissue.[20]

**2. HMEPS has standing to bring its suit under article 6243h.**

Standing requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304, 307 (Tex. 2008)). The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). A plaintiff has standing when it is personally aggrieved. *Id.*

In its second issue, the City appellants argue that HMEPS itself lacks standing to bring this suit under article 6243h. The City appellants rely solely on

---

[20] The City appellants also argue that the City Controller has no role or duties relating to appropriations or allocations for current or future budgets under the City Charter. In any event, HMEPS did not so limit its *ultra vires* claims. HMEPS alleged violations with regard to the pickup and payment of the City's mandatory contributions under article 6243h. The City Charter indicates that the Controller has involvement in the payment of City funds.

section 3(g). Section 3(g) states that "[t]he pension board may institute legal action in the name of the pension board on behalf of the pension system." Tex. Rev. Civ. Stat. Ann. art. 6243h, § 3(g). Section 3(g), however, does not state that the pension system is prohibited from instituting or participating in legal action, or otherwise impose any conditions on its being able to do so. *See id.*

Having reviewed HMEPS's pleadings liberally in its favor, we conclude that HMEPS alleged sufficient facts to affirmatively demonstrate its standing to seek redress for the City officials' *ultra vires* noncompliance with article 6243h causing injury to HMEPS. We overrule issue II.

### III. CONCLUSION

Accordingly, we reverse the trial court's denial of the City appellants' plea to the jurisdiction with regard to HMEPS's mandamus claims against the City of Houston alleging failures to comply and seeking to compel compliance with article 6243h. We render judgment dismissing these claims.

We reverse the trial court's denial of the plea with regard to HMEPS's mandamus claims against the City officials to the extent that HMEPS alleges failures to comply with section 8 of article 6243h or the MCA and remand with instructions for the trial court to provide HMEPS a reasonable opportunity to properly plead *ultra vires* claims against the City officials.

We affirm the trial court's denial of the plea with regard to HMEPS's mandamus claims against the City officials alleging *ultra vires* failures to comply and seeking to compel compliance with section 2(u) of article 6243h.

We affirm the trial court's denial of the plea with regard to HMEPS's mandamus claims against the City of Houston alleging failure to comply and seeking to compel compliance with the TPIA.

31

We reverse the trial court's denial of the plea with regard to HMEPS's mandamus claims alleging TPIA violations against defendants other than the City or its public-information officer. We render judgment dismissing these claims.


/s/    Marc W. Brown
        Justice


Panel consists of Chief Justice Frost, and Justices McCally and Brown.